# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Robert Andrew Hedesh, Respondent.

Appellate Case No. 2015-001430

Opinion No. 27559
Submitted July 28, 2015 – Filed August 12, 2015

## DEFINITE SUSPENSION

Lesley M. Coggiola, Disciplinary Counsel, and Ericka M. Williams, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Robert Andrew Hedesh, *Pro Se*.

**PER CURIAM:** In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court Rules (SCACR). In the Agreement, respondent admits misconduct and consents to the imposition of any sanction set forth in Rule 7(b), RLDE, Rule 413, SCACR. We accept the Agreement and suspend respondent from the practice of law in this state for ninety days. The facts, as set forth in the Agreement, are as follows.

## Facts

The allegations set forth in the Agreement relate to respondent's actions as a closing attorney. As further background information, respondent served as a closing attorney for Belle Terre Title Company, which was located in a separate suite in the same building as respondent's law office. Respondent's trust account checks were housed in a locked cabinet in Belle Terre's suite. In October 2008, there was a theft at Belle Terre's office and forty blank checks were stolen from the checkbook for respondent's trust account. The theft was not discovered initially

because there was no forced entry to the office and the stolen checks were removed from the back of the checkbook. Near the end of November 2008, respondent was attempting to conduct a manual reconciliation of his trust account when he discovered inconsistencies in the check numbers. An investigation led to the arrest of the title agent's brother and two accomplices. The persons responsible for the theft negotiated several of the stolen checks before being apprehended. Respondent sought criminal charges against the perpetrators and filed a civil lawsuit against them. Respondent also filed lawsuits against the banks that cashed the stolen checks. Respondent deposited his own funds to cover some of the losses in his trust account. Respondent cooperated at all times with law enforcement.

## Matter I

In three closings, respondent failed to ensure the closing documents were recorded in a timely manner. In a fourth closing, the closing documents were not recorded at all. The lender recorded the documents without respondent's assistance, and as a result, had to pay $7,000 in deed stamps for the transaction because respondent did not have the money.

The transaction closed in September 2008, but the lender was not able to record the documents until March 2009. During this period, respondent delegated the task of recording the closing documents to the title agent with Belle Terre. Respondent represents he supervised the process; however, he was not aware the documents were not recorded until it was brought to his attention by the lender. Respondent further represents he did not immediately have the funds for the deed stamps due to the theft of his trust account checks but he fully intended to cover the losses in this matter. However, the lender chose to immediately file the documents to protect its interests. Respondent represents he had exhausted most of his personal funds and his home equity line, and his only access at the time was to start taking cash from his credit cards.

## Matter II

On December 29, 2008, the computer system at the bank where respondent's trust account was established indicated a check in the amount of $186,656.02 written on respondent's trust account could not be paid due to insufficient funds. The following day, respondent deposited a personal check for $10,000 into the account so the trust account check could be negotiated. Respondent informed the bank about the theft of trust account checks, and he signed affidavits of forgery for each of the checks written by the perpetrators, totaling approximately $88,590.

## Matter III

ODC received notice of a check written on insufficient funds from respondent's trust account in the amount of $150.97. The check was written on August 11, 2008, but not presented for payment until June 23, 2009. At the time the check was presented, respondent's trust account was not in use and had a zero balance. Respondent ceased use of the account in 2008 following the theft of checks. Respondent represents he made contact with the payee of the check and resolved the matter.

## Matter IV

In January 2011, RBC Bank brought suit against respondent in federal court alleging negligence and breach of fiduciary duty. The suit arose from respondent's role as closing attorney in seventeen transactions occurring between January 17, 2008 and August 19, 2008. In each case, RBC loaned funds that were used to purchase residential properties. The transactions were part of an elaborate mortgage fraud scheme where participants in the scheme recruited "straw buyers" to apply for a loan to purchase property. A fraudulent loan application was prepared, supported by fake documentation regarding the straw buyers' income or assets. Participants in the scheme then induced appraisers to produce inflated appraisals. At closing, loan proceeds were paid to participants in the scheme or companies controlled by them. Thereafter, the loans went into default. A few payments were made on some of the loans, but no payments were made on the remaining loans.

It is not alleged respondent participated in the loan scheme or even knew of the scheme; however, at the time of the real estate transactions, all of the books and records for respondent's real estate trust account were under the control and custody of a title agent for Chicago Title Insurance Company. Respondent permitted the title agent to write checks drawn on respondent's trust account for the purpose of disbursing loan proceeds, and allowed the agent to reconcile and audit the trust account. Respondent also permitted the title agent to prepare title abstracts on each property, prepare HUD-1 statements for each transaction and collect borrower contributions and payoff information. Respondent failed to properly supervise the title agent in these transactions. The title agent was a key participant in the mortgage fraud scheme.

## Matter V

Respondent received $5,000 as an earnest money deposit from a potential purchaser of real estate. The Contract of Sale for the property was signed by the seller and purchaser on June 7, 2010, but the sale was not consummated. The seller of the property requested that the earnest money be transferred to him because the buyer had breached the terms of the sales contract. Respondent informed the seller that respondent would need a release signed by the buyer, or a court order, before respondent could release the money to the seller. The seller filed a lawsuit against the buyer for breach of contract and requested the court issue an order for the release of the $5,000 deposit to the seller. The seller was unable to locate the buyer to serve the complaint so the lawsuit did not progress. Respondent represents the $5,000 deposit is still being held in his trust account.

## Law

Respondent admits that by his conduct he has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.15(a)(a lawyer shall hold property of clients or third persons that is in the lawyer's possession in connection with a representation separate from the lawyer's own property, such funds shall be kept in a separate account, and complete records of such funds shall be kept by the lawyer); Rule 5.3 (a lawyer who has supervisory authority over a nonlawyer shall make reasonable efforts to ensure the person's conduct is compatible with the professional obligations of the lawyer and the lawyer shall be responsible for conduct of the person that would be a violation of the RPC if engaged in by a lawyer); and Rule 8.4(a) (it is professional misconduct for a lawyer to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another). Respondent also admits he has violated Rule 7(a)(1)(it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct or any other rules of this jurisdiction regarding professional conduct of lawyers) of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR. Finally, respondent admits he violated Rule 417, SCACR (financial recordkeeping requirements).

Respondent states he has ceased doing any buyer related real estate work. He states he has participated in less than five transactions in the last three years and those involved preparing deeds related to work with other clients such as homeowners' associations.

In addition to consenting to the imposition of any sanction in Rule 7(b), RLDE, respondent also agrees to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct and to complete the Legal Ethics and Practice Program Ethics School and Trust Account School within nine months of the imposition of any sanction.

## Conclusion

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law in this state for ninety days. He shall also pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Lawyer Conduct and complete the Legal Ethics and Practice Program Ethics School and Trust Account School within nine months of the date of this opinion, as agreed. Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR.

**DEFINITE SUSPENSION.**

**TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.**